IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| BRANDY MILLER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>PELOTON INTERACTIVE, INC.,<br><br>Defendant. | 3:23-cv-02101-MGL<br><br>**CLASS ACTION COMPLAINT**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff Brandy Miller ("Plaintiff"), individually and on behalf of all others similarly situated, respectfully submits the following for her Complaint against Peloton Interactive, Inc. ("Peloton" or "Defendant") and alleges upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

**PARTIES**

1. Plaintiff Brandy Miller is a resident and citizen of Lexington County, South Carolina, who purchased and used a Peloton Bike Model PL01 ("Product").

2. Peloton is a Delaware corporation, with its corporate headquarters and principal place of business located in New York City, New York. Peloton is subject to the jurisdiction of this Court and may be served with process at its principal executive office located at 441 9th Avenue, 6th Floor, New York, NY 10001.

3. Peloton markets and sells its apparel, hardware and hardware accessories, and Subscription Service throughout the United States including in this District.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because: (i) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interests and costs, and (ii) Plaintiff and members of the proposed class are citizens of states different from Peloton's home states. This court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391 because Peloton transacts their business in this District, and a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this District.

6. This Court has Personal Jurisdiction over Defendant Peloton because they have sufficient minimum contacts in this District as Defendant marketed, advertised, and distributed the products in this District. Defendant does substantial business in South Carolina and within the District; and at all times relevant hereto, Defendant promoted, marketed, distributed, warranted, and sold stationary bicycles and other fitness equipment in interstate commerce. Further, Defendant, as a corporate entity, is deemed to reside in any judicial district in which it is subject to personal jurisdiction.

## OPERATIVE FACTS

7. Defendant Peloton markets itself as "the largest interactive fitness platform in the world," claiming to have a "loyal community of more than 6.6 million members."[1]

8. Defendant's mission statement showcases the company's use of "technology and design to connect the world through fitness, empowering people to be the best version of themselves anywhere, anytime."[2]

---

[1] https://investor.onepeloton.com (last visited May 17, 2023).
[2] https://www.onepeloton.com/company (last visited May 17, 2023).

9. Plaintiff Miller purchased a Peloton Bikes Model PL01 directly from the Peloton website on or around late 2021.

10. On May 11, 2023, the United States Consumer Product Safety Commission ("CPSC") issued a recall of certain Peloton equipment.[3] Specifically, this recall "involves Peloton Bikes with model number PL01. The Peloton Bike measures 4 ft. long x 2 ft. wide, and has an adjustable seat, handlebar, and screen, which tilts up and down to accommodate different heights. The Peloton name and the model number are displayed on the inside front fork, near the flywheel."[4]

11. The CPSC recommended consumers immediately stop use of the recalled equipment.

12. In a statement, Defendant Peloton noted that the "bikes were sold from January 2018 to May 2023 in the United Sates only."[5]

13. Defendant Peloton, in an email to consumers, identified the reason for the recall stating:

**REASON FOR THE RECALL:** The original Peloton Bike seat post can break unexpectedly during use, creating a potential fall and injury risk.

14. In their recall notice the CPSC notes that "Peloton has received 35 reports of the seat post breaking and detaching from the bike during use, including 13 reports of injuries including a fractured wrist, lacerations and bruises due to falling from the bike."[6]

## CLASS ACTION ALLEGATIONS

15. Plaintiff brings this case as a class action pursuant to Federal Rule of Civil Procedure 23 on her own behalf and as the Class representatives on behalf of the following:

---

[3] https://www.cpsc.gov/Recalls/2023/Peloton-Recalls-Two-Million-Exercise-Bikes-Due-to-Fall-and-Injury-Hazards (last visited May 17, 2023).
[4] *Id.*
[5] https://www.cnn.com/2023/05/11/business/peloton-bike-recall/index.html (last visited May 17, 2023).
[6] https://www.cpsc.gov/Recalls/2023/Peloton-Recalls-Two-Million-Exercise-Bikes-Due-to-Fall-and-Injury-Hazards (last visited May 17, 2023).

> **Nationwide Class:** All persons within the United States who purchased the Product within the applicable statute of limitations.
>
> **South Carolina Subclass:** All persons within South Carolina who purchased the Product within the applicable statute of limitations.

16. The Nationwide Class and South Carolina Subclass shall collectively be referred to herein as the "Classes."

17. Plaintiff reserves the right to amend the Class definitions if further investigation and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

18. Excluded from the Classes are governmental entities, Peloton, its officers, directors, affiliates, legal representatives, and employees.

19. This action has been brought and may be maintained as a class action under Federal Rule of Civil Procedure 23.

20. **Numerosity** – Federal Rule of Civil Procedure 23(a)(1). The Classes number at least in the thousands of persons. As a result, joinder of all Class members in a single action is impracticable. Class members may be informed of the pendency of this class action through a variety of means, including, but not limited to, direct mail, email, published notice, and website posting.

21. **Existence and Predominance of Common Questions of Law and Fact** – Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3). There are questions of fact and law common to the Classes that predominate over any question affecting only individual members. Those questions, each of which may also be certified under Rule 23(c)(4), include without limitation:

   a. whether Peloton's advertising, merchandising, and promotional materials directed to Plaintiff and the Classes were deceptive regarding the risks posed by Peloton's

4

        Product;

    b. whether Peloton made representations regarding the safety of the Product;

    c. whether Peloton omitted material information regarding the safety of the Product;

    d. whether Peloton's Product was merchantable;

    e. whether Peloton violated the consumer protection statutes invoked herein;

    f. whether Peloton's conduct alleged herein was fraudulent; and

    g. whether Peloton was unjustly enriched by sales of the Product.

    h. whether Class members are entitled to damages, restitution, restitutionary disgorgement, equitable relief, statutory damages, exemplary damages, and/or other relief; and

22.  The questions set forth above predominate over any questions affecting only individual persons concerning sales of Peloton's Product throughout the United States and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of Plaintiff's claims.

23.  **Typicality** – Federal Rule of Civil Procedure 23(a)(3). Plaintiff's claims are typical of those of the Classes in that the Class members uniformly purchased Peloton's Products and were subjected to Peloton's uniform merchandising materials and representations at the time of purchase.

24.  **Superiority** – Federal Rule of Civil Procedure 23(b)(3). A class action is the appropriate method for the fair and efficient adjudication of this controversy. The presentation of separate actions by individual Class members could create a risk of inconsistent adjudications, establish incompatible standards of conduct for Peloton, and/or substantially impair or impede the ability of Class members to protect their interests. In addition, it would be impracticable and undesirable for each member of the Class who suffered an economic loss to bring a separate action. The

maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Class members.

25. **Adequacy** – Federal Rule of Civil Procedure 23(a)(4). Plaintiff is an adequate representative of the Classes because she is a member of the Classes and her interests do not conflict with the interests of the Classes that she seeks to represent. The interests of the members of the Classes will be fairly and adequately protected by Plaintiff and her undersigned counsel. Counsel is experienced in the litigation of civil matters, including the prosecution of consumer protection class action cases.

26. **Insufficiency of Separate Actions** – Federal Rule of Civil Procedure 23(b)(1). Absent a representative class action, members of the Classes would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Peloton. The proposed Classes thus satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

27. **Declaratory and Injunctive Relief** – Federal Rule of Civil Procedure 23(b)(2). Peloton has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Classes as a whole. In particular, Plaintiff seeks to certify a Class to enjoin Peloton from selling or otherwise distributing the Products as labeled

until such time that Defendant can demonstrate to the Court's satisfaction that the Products confer the advertised benefits and are otherwise safe to use as intended.

28. Additionally, the Classes may be certified under Rule 23(b)(1) and/or (b)(2) because:

   a. The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members of the Classes that would establish incompatible standards of conduct for Peloton;

   b. The prosecution of separate actions by individual members of the Classes would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other members of the Classes not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

   c. Peloton has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final and injunctive relief with respect to the members of the Classes as a whole.

## CAUSES OF ACTION

### COUNT I
### UNJUST ENRICHMENT

29. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

30. Plaintiff brings this claim on behalf of herself individually and on behalf of the Classes.

31. Plaintiff, and the other members of the Classes, conferred benefits on Defendant in the form of monies paid to purchase Defendant's defective Product.

32. Defendant voluntarily accepted and retained this benefit.

33. Because this benefit was obtained unlawfully, namely by selling and accepting compensation for products unfit for human use, it would be unjust and inequitable for Defendant to retain the benefit without paying the value thereof.

34. Defendant received benefits in the form of revenues from purchases of the Product to the detriment of Plaintiff, and the other members of the Classes, because Plaintiff, and members of the Classes, purchased defective products that were not what they bargained for and were not safe and effective, as claimed.

35. Defendant has been unjustly enriched in retaining the revenues derived from the purchases of the Product by Plaintiff and the other members of the Classes. Retention of those monies under these circumstances is unjust and inequitable because Defendant's defective Products, which posed a risk of injury to Plaintiff and members of the Classes, because they would have not purchased the Product had they known the true facts.

36. Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and members of the Classes are unjust and inequitable, Plaintiff and the Classes are entitled to recover from Defendant all wrongfully collected and improperly retained benefits by Defendant, plus interest thereon.

## COUNT II
## BREACH OF EXPRESS WARRANTY

37. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

38. Plaintiff brings this claim on behalf of herself individually and on behalf of the Classes.

39. Defendant expressly warranted that its Product was safe and effective to members of the consuming public, including Plaintiff.

40. More specifically, Defendant expressly warranted that the Product was compliant with the applicable product safety standards.

41. Defendant's affirmations of fact and promises and its omissions were material, and Plaintiff and members of the Classes reasonably relied upon such representations and omissions in purchasing and/or using the Products.

42. The Product does not conform to these express representations because the seat post assembly could break during use, posing both fall and injury risk to the consumer/user.

43. Therefore, Defendant breached its express warranties to the consuming public, including, but not limited to, Plaintiff.

44. Plaintiff and members of the Classes have performed all conditions precedent to Defendant's liability for its breach of express warranty.

45. As a direct and proximate result of the Defendant's breach of express warranties, Plaintiff and members of the Classes have been damaged because they did not receive the Product as specifically warranted by Defendant. Plaintiff and members of the Classes did not receive the benefit of the bargain and suffered damages at the point of sale stemming from her payment for the Product.

46. Plaintiff and the Classes seek actual damages, attorneys' fees, costs and any other just and proper relief available thereunder for Defendant's failure to deliver goods conforming to their express warranties and resulting breach.

## COUNT III
## BREACH OF IMPLIED WARRANTY OF MERCHANABILITY

47. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

48. Plaintiff brings this claim on behalf of herself individually and on behalf of the Classes.

49. Peloton is a merchant and was at all relevant times involved in the manufacturing, distributing, warranting, and/or selling of the Product.

50. The Product is a "good" under the relevant laws, and Peloton knew or had reason to know of the specific use for which the Product, as a good, was purchased.

51. Peloton entered into agreements with retailers to sell its Product to be used by Plaintiff and Class Members for personal use.

52. The implied warranty of merchantability included with the sale of each Product means that Peloton guaranteed that the Product would be fit for the ordinary purposes for which stationary bikes are used and sold, and were not otherwise injurious to consumers. The implied warranty of merchantability is part of the basis for the benefit of the bargain between Peloton, and Plaintiff and the Class Members.

53. Peloton breached the implied warranty of merchantability because the Product is not fit for its ordinary purpose of providing reasonably reliable and safe use for fitness and enjoyment because the Product can break without warning. Therefore, the Product is not fit for its particular purpose of fitness and enjoyment.

54. Peloton's warranty expressly applies to the purchaser of the Product, creating privity between Peloton and Plaintiff and Class Members.

55. However, privity is not required because Plaintiff and Class Members are the intended beneficiaries of Peloton's warranties and its sale through retailers. Peloton's retailers were not intended to be the ultimate consumers of the Product and have no rights under the warranty agreements. Peloton's warranties were designed for and intended to benefit the consumer only, including Plaintiff and Class Members.

56. Peloton has been provided sufficient notice of its breaches of implied warranties

associated with the Product. Peloton was put on constructive notice of its breach through its review of consumer complaints and other reports, and upon information and belief through its own product testing.

57. Had Plaintiff, Class Members, and the consuming public known that the Product could break without warning, they would not have purchased the Product or would have paid less for it.

58. As a direct and proximate result of the foregoing, Plaintiff and Class Members suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

### COUNT IV
### BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

59. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

60. Plaintiff brings this claim on behalf of herself individually and on behalf of the Classes.

61. Defendant designed, manufactured, marketed, distributed, supplied, and sold its Product with an implied warranty that it was fit for the particular purpose of fitness and enjoyment, knowing that consumers would rely on their skill and/or judgment to furnish suitable goods.

62. Members of the consuming public, including consumers such as Plaintiff, were the intended third-party beneficiaries of the warranty.

63. Defendant's Product was not fit for the particular purpose as a safe means of exercising, due to the unreasonable risks of bodily injury associated with its use.

64. Plaintiff in this case reasonably and justifiably relied on Defendant's representations that the Product was safe to exercise with.

65. Defendant breached the implied warranty of fitness for a particular purpose, which was the direct and proximate cause of Plaintiff's injuries and damages.

66. Plaintiff and the Classes seek actual damages, attorneys' fees, costs and any other just and proper relief available.

**COUNT V**
**BREACH OF CONTRACT**

67. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

68. Plaintiff brings this claim on behalf of herself individually and on behalf of the Classes.

69. As described herein, Plaintiff and the Classes formed contracts with Defendant.

70. Every contract imposes the duty of good faith and fair dealing upon the parties in performance and enforcement of the contract.

71. An express and/or implied term of the contracts between the Plaintiff and the Classes is that Defendant agreed that the sale was being conducted in compliance with all laws and regulations governing such sales.

72. By failing to properly service and maintain their equipment sold in exchange for the fees it charged and collected from the Plaintiff and the Classes for the purchase of their Product as well as their on-demand exercise membership, Defendant failed to conduct the sale of the Product to the Plaintiff and the Classes in compliance with all laws and regulations governing such sales.

73. By its aforesaid conduct, Defendant breached the terms of the contracts it had with the Plaintiff and the Classes, including any implied or express warranties therein, and acted in bad faith.

74. Defendant has wrongfully, recklessly, and or/intentionally breached the duty of good faith by denying Plaintiff and the Classes the benefits to which they bargained and paid for in their sales contracts.

75. Defendant's breaches of the covenant of good faith and fair dealing have proximately and directly caused damages to Plaintiff and the Classes.

76. As a direct and proximate result of Defendant's breach, Plaintiff and the Classes are legally and equitably entitled to damages, to be decided by the trier of fact in this action.

## COUNT VI
## NEGLIGENCE

77. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

78. Plaintiff brings this claim on behalf of herself individually and on behalf of the Classes.

79. Defendant, directly or indirectly, caused Product to be sold, distributed, marketed, promoted, and/or used by Plaintiff and the Classes.

80. At all times relevant to this litigation, Defendant had a duty to exercise reasonable care in the design, research, marketing, advertisement, supply, promotion, packaging, sale, and distribution of Peloton's products, including the duty to take all reasonable steps necessary to provide equipment that was safe to use for the purposes of exercise and fitness.

81. At all times relevant to this litigation, Defendant knew or, in the exercise of reasonable care, should have known that it was required to provide Plaintiff and members of the Classes with properly working and safe Product.

82. Accordingly, at all times relevant to this litigation, Defendant knew or, in the exercise of reasonable care, should have known that not providing reasonably safe Product could cause or be associated with Plaintiff's and members of the Classes' injuries.

83. As such, Defendant breached its duty of reasonable care and failed to exercise ordinary care when failing to provide safe Product, in that Defendant knew or had reason to know that Plaintiff and members of the Classes would need properly functioning equipment bought from Defendant and failed to provide such.

84. Despite the ability and means to provide safe and properly functioning equipment to Plaintiff and members of the Classes, Defendant has failed to do so. Indeed, Defendant wrongfully failed to immediately recall defective equipment from Plaintiff and members of the Classes.

85. Defendant's negligence included:

   a. Selling and/or distributing Peloton products while negligently and/or intentionally concealing equipment failures and defectiveness;

   b. Failure to provide safe and properly functioning equipment to Plaintiff and member of the Classes when required;

   c. Systematically failing to provide consumers with safe and properly functioning equipment in multiple states.

   d. Failing to immediately recall defective equipment purchased by Plaintiff and members of the Classes.

86. As a direct and proximate result of Defendant's negligence, Plaintiff and the Classes have suffered and will continue to suffer actual monetary damages.

87. Plaintiff's and Class members' injuries were foreseeable as Defendant had received complaints from Plaintiff and Class members regarding the failure of the seat assembly which had and could continue to cause injury.

88. Plaintiff and the Classes seek actual damages, injunctive and declaratory relief, attorney's fees, costs, and any other just and proper relief available.

## COUNT VII
## DESIGN DEFECT

89. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

90. Plaintiff brings this claim on behalf of herself individually and on behalf of the Classes.

91. At all times relevant to this cause of action Defendant is, and all times mentioned was, a Delaware corporation in good standing and authorized to do business in this state that provides a range of fitness technology and equipment, including the Product at issue here.

92. Defendant was under a duty to act reasonably to design, develop, manufacture, test, inspect, and/or market products that did not pose a risk of serious injury to ordinary consumers, including Plaintiff and Class members, when they are used in the manner for which they were intended.

93. At all times relevant, Defendant designed, tested, manufactured, labeled, marketed, and/or promoted its Product, placing it into the stream of commerce.

94. The Product was designed, tested, inspected, manufactured, assembled, developed, labeled, marketed, and/or promoted by Defendant in a condition that was defective and unreasonably dangerous to ordinary consumers, including Plaintiff and Class members.

95. The Product was and continues to be defective in its design in that it is not reasonably fit, suitable, or safe for their intended purpose and/or its foreseeable risks exceed the benefits associated with its design.

96. The Product was and continues to be unreasonably dangerous and defective in that, as designed, it failed to perform safely when used by ordinary consumers, including Plaintiff and Class members, in the manner for which they were intended.

97. The Product was and continues to be unreasonably dangerous and defective in that, when they left the possession of Defendant it posed a risk of serious injury which could have been reduced or avoided by the adoption of feasible reasonable alternative design. There were safer alternative designs and/or materials for the Product.

98. The Product, as designed, was defective due to its inadequate warnings and/or instruction and/or inadequate testing and/or inspection.

99. The Product, as designed, was defective due to its inadequate warnings and/or instructions because, after Defendant knew or in the existence of ordinary care, should have reasonably known of the risks of serious injury from their use and acquired additional knowledge and information confirming its defective and dangerous nature, Defendant failed to provide adequate warnings to the ordinary consumer to whom Defendant was directly marketing and promoting its products and services; and further, Defendant continued to affirmatively promote its fitness products, including the Products, as safe and effective without such warnings.

### COUNT VIII
### MANUFACTURING DEFECT

100. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

101. Plaintiff brings this claim on behalf of herself individually and on behalf of the Classes.

102. Defendant owes a duty to Plaintiff to manufacture the Peloton Product in a safe and reasonable manner, creating a product that is safe for human use.

103. The defective manufacture of the Product caused it to be not fit, suitable, or safe for their intended purpose, human use.

104. The product was dangerous, defective, and possibly deadly due to Defendant's improper manufacture.

105. Defendant knew or should have known of the dangers of defectively manufacturing home fitness equipment, given the body of literature surrounding such defective manufacture and

especially in light of Defendant's recent fine for "failing to promptly report treadmill hazards and for distributing recalled treadmills with a lethal defect."[7]

106. Had Defendant properly manufactured the Peloton Bikes Model PL01, Plaintiff and other members of the Classes would not have been injured from such defect.

107. Defendant's manufacture of defective stationary bikes was the result of such dangerous risk of serious bodily injury.

108. The bike's seat post assembly, thus defect, existed at the time the product left Defendant's control.

109. Defendant could have adopted a safer manufacturing or quality control scheme in which Defendant did not expose consumers to risk of injury, thus creating a safe Product.

110. It is foreseeable that the improper and hazardous manufacture of a fitness product, such as stationary bicycles, would lead to injury of those who purchased and used such improperly manufactured products.

111. Further evidence of such defect, prior to leaving Defendant's facility, is the recall itself. If the Product was not defectively manufactured, Defendant would not have issued such a recall due to its own knowledge of its negligently manufactured product.

112. Plaintiff, nor any reseller or other person who obtained custody of the Product, made any alterations to the product.

113. Plaintiff followed all precautions, advisements, and standard practices as included on the Recalled Products labeling.

114. And to be clear, Plaintiff and other members of the Classes were injured from this defective manufacturing process.

---

[7] https://www.cnn.com/2023/01/05/business/peloton-fine-safety-defects/index.html (last visited May 17, 2023).

115. Plaintiff and other members of the Classes have suffered various pains from the defective product and even injury from the assembly failing. As such, Plaintiff and other members of the Classes have suffered physical injury from this defective, unsafe product.

116. The defective Product was the sole result of Plaintiff's and other members of the Classes injuries.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the other members of the Classes alleged herein, respectfully request that the Court enter judgment in her favor and against Defendant as follows:

A. For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as the representatives for the Classes and Plaintiff's attorneys as Class Counsel;

B. For an order declaring the Defendant's conduct violates the causes of action referenced herein;

C. For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

D. For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

E. For prejudgment interest on all amounts awarded;

F. For an order of restitution and all other forms of equitable monetary relief;

G. For injunctive relief as pleaded or as the Court may deem proper; and

H. For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury for all issues so triable.

Dated: May 17, 2023                                             Respectfully Submitted

  By: /s/Blake G. Abbott
Blake G. Abbott (Fed ID #13354)
Paul J. Doolittle (Fed ID #6012)
**POULIN | WILLEY | ANASTOPOULO, LLC**
32 Ann Street
Charleston, SC 29403
Tel: (803) 222-2222
Email: pauld@akimlawfirm.com
        blake@akimlawfirm.com