

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| BRANDY MILLER, *Individually and on Behalf of All Others Similarly Situated*, Plaintiff, | § § § § |
| vs. | §   Civil Action No. 3:23-2101-MGL § |
| PELOTON INTERACTIVE, INC., Defendant. | § § § |

**MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANT'S TO COMPEL ARBITRATION
AND DENYING DEFENDANT'S MOTION TO DISMISS**

**I.   INTRODUCTION**

Plaintiff Brandy Miller (Miller) filed this putative class action against Defendant Peloton Interactive, Inc. (Peloton), alleging state law claims of warranty of merchantability, breach of implied warranty of fitness for a particular purpose, breach of contract, negligence, design defect, and manufacturing defect.  This Court has jurisdiction under 28 U.S.C. § 1332(a)(1).

Pending before the Court are Peloton's motion to compel arbitration and motion to dismiss. Having carefully considered the motions, the response, the reply, the record, and the applicable law, it is the judgment of the Court the Peloton's motion to compel arbitration will be granted, its motion to dismiss will be denied, and this matter will remain stayed pending a determination of arbitrability.

II.     FACTUAL AND PROCEDURAL HISTORY

Miller brings this suit in response to Peloton's May 2023 recall of certain of its exercise bikes. Peloton offered free seat post replacements due to reports of that part breaking on some bikes. Miller alleges she would have refrained from purchasing her bike or would have paid less for it had she known about the potential issues. She fails to allege, however, that her seat post broke.

Miller affirmatively agreed to Peloton's Terms of Service when she became a Peloton member—i.e., signed up for an account that provides access to online fitness classes and other resources—and when she purchased her bike. She also agreed to updates to the Terms of Service five times after that, at least one time affirmatively by clicking an "agree" button. One of those updates involved changes to the arbitration agreement. She agreed to that change one day before she filed this suit.

Every iteration of the Terms of Service included an arbitration agreement. First, the following information was included in bold:

> **PLEASE READ: THESE TERMS CONTAIN A BINDING ARBITRATION AGREEMENT AND CLASS ACTION WAIVER (SECTION 20). READ CAREFULLY, INCLUDING YOUR RIGHT, IF APPLICABLE, TO OPT OUT OF ARBITRATION. EXCEPT FOR CERTAIN TYPES OF DISPUTES DESCRIBED IN SECTION 20 BELOW, OR WHERE PROHIBITED BY LAW, BY ENTERING INTO THESE TERMS YOU EXPRESSLY AGREE THAT DISPUTES BETWEEN YOU AND PELOTON WILL BE RESOLVED BY BINDING, INDIVIDUAL ARBITRATION, AND YOU HEREBY WAIVE YOUR RIGHT TO PARTICIPATE IN A CLASS ACTION LAWSUIT OR CLASS-WIDE ARBITRATION.**

Operative Terms of Service at 1; *see also* previous Terms of Service (containing the same provision).

Later, the arbitration provision, entitled "ARBITRATION AGREEMENT & CLASS ACTION WAIVER – IMPORTANT – PLEASE REVIEW AS THIS MAY AFFECT YOUR LEGAL RIGHTS.  APPLICABLE TO THE FULL EXTENT PERMITTED BY LAW" states:

> **Mandatory Arbitration of Disputes**.  We each agree that any dispute, claim or controversy arising out of or relating to these Terms or the breach, termination, enforcement, interpretation or validity thereof or the use of the Services, Content, or Peloton connected fitness products, equipment, apparel or accessories (each, a "**Dispute**" and collectively, the "**Disputes**") will be resolved solely by binding, individual arbitration, unless expressly provided otherwise in this Section 20, and not in a class, representative or consolidated action or proceeding.  You and Peloton agree that the U.S. Federal Arbitration Act (or equivalent laws in the jurisdiction in which the Peloton entity that you have contracted with is incorporated) governs the interpretation and enforcement of these Terms and that YOU AND PELOTON ARE EACH WAIVING THE RIGHT TO A TRIAL BY JURY OR TO PARTICIPATE IN A CLASS ACTION.  This Section 20 shall survive the termination of these Terms.

Operative Terms of Service § 20.1; *see also* previous Terms of Service (containing the same provision).  Section 20 also contains a class action waiver.  It goes on to explain:

> The arbitrator shall have exclusive authority to decide all issues relating to the interpretation, applicability, enforceability and scope of this arbitration agreement, except that only a court of competent jurisdiction as set forth in Section 21 of these Terms (and not an arbitrator) shall have the exclusive authority to resolve any claim that all or part of the Class Action Waiver set forth in these Terms or the Mass Filing procedures set forth in Section 20.5 below are unenforceable, unconscionable, void, or voidable.

Operative Terms of Service § 20.4; *see also* previous Terms of Service (containing the same provision).

Each iteration of the Terms of Service allowed members to opt out of the arbitration agreement and continue to use Peloton's services.  But, Miller failed to do so.

After Peloton filed the motion to compel arbitration and motion to dismiss, Miller responded.  Subsequently, the Court granted the parties' consent motion to stay.  Finally, Peloton

3

replied.  The Court, having been fully briefed on the relevant issues, will now adjudicate the motions.

### III.     STANDARD OF REVIEW

The Federal Arbitration Act (FAA) provides a federal district court with the authority to enforce an arbitration agreement by compelling parties to arbitrate their dispute.  9 U.S.C. § 4 ("A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28 . . . for an order directing that such arbitration proceed in the manner provided for in such agreement.").

Section 2 of the FAA, which applies to any "contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract," provides that the written agreements to arbitrate contained in such contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.

The United States Supreme Court has noted a strong federal policy favoring arbitration.  *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]").

In other words, Congress intended the FAA to "overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts.  Or in another formulation: The policy is to make arbitration agreements as enforceable as other contracts, but not more so."  *Morgan v. Sundance, Inc.*, 142 S.Ct. 1708, 1713

(2022). "Accordingly, a court must hold a party to its arbitration contract just as the court would to any other kind. But a court may not devise novel rules to favor arbitration over litigation." *Id.*

The Fourth Circuit Court of Appeals recognized the FAA's strong federal policy favoring arbitration agreements in *Adkins v. Labor Ready, Inc.*, 303 F.3d 496 (4th Cir. 2002), where the court stated, "[a] district court . . . has no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview." *Id.* at 500.

Because "arbitration constitutes a more efficient dispute resolution process than litigation . . . 'due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration.'" *Id.* at 500 (quoting *Volt Info. Sciences, Inc. v. Bd. of Tr. of Leland Stanford Junior Univ.*, 489 U.S. 468, 475–76 (1989)).

"[T]here is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (citation omitted) (internal quotation marks omitted). "In the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where . . . the arbitration clause [is] quite broad." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 584-85 (1960).

## IV.     DISCUSSION AND ANALYSIS

### A.     *Whether the parties entered into an arbitration agreement*

Peloton insists the parties entered into an enforceable arbitration agreement. Miller contends the contract was unconscionable, and thus the arbitration agreement unenforceable.

As discussed above, the Court must "grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview." *Adkins*, 303 F.3d at 500. Moreover, "as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract. [Thus,] unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006).

Miller admits that she entered into an agreement with Peloton—indeed several of her claims rely on that fact. *See* Complaint ¶ 69 ("[Miller] and the Classes formed contracts with [Peloton]."). That agreement, as discussed above, contained an arbitration provision. She is therefore unable to claim she failed to agree to arbitration as part that agreement. *See Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 418 (4th Cir. 2000) (estopping party from escaping a contract's arbitration clause when the party "has consistently maintained that other provisions of the same contract should be enforced to benefit him," including warranty provisions).

Accordingly, issues regarding the contract's validity, including unconscionability, must be considered first by the arbitrator. *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) (reasoning the issue of unconscionability of the arbitration agreement, which speaks to the validity of the contract as a whole, is a matter for the arbitrator to decided).

### B.     Whether questions about the scope of the arbitration agreement must be resolved by an arbitrator

Peloton maintains that the parties agreed to arbitrate threshold issues such as the application and scope of the arbitration clause, and thus the Court should refrain from deciding arbitrability. Miller posits these issues should be decided by the Court.

When the parties agree to arbitrate, the Court generally engages in a "limited review to ensure that the dispute is arbitrable–i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Glass v. Kidder Peabody & Co.*, 114 F.3d 446, 453 (4th Cir. 1997).

But, "consistent with arbitration's contractual nature, parties may choose 'to arbitrate gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.'" *Simply Wireless, Inc. v. T-Mobile US, Inc.*, 877 F.3d 522, 526 (4th Cir. 2017) (quoting *Rent-A-Ctr., W., Inc.*, 561 U.S. at 68–69) (internal quotation marks omitted).

"However, because empowering an arbitrator to determine arbitrability in the first instance cuts against the normal rule that arbitrability disputes are for the court to resolve, a court must find by clear and unmistakable evidence that the parties have chosen to give arbitrability questions to an arbitrator." *Id.* (citation omitted) (internal quotation marks omitted).

"The clear and unmistakable standard is exacting, and the presence of an expansive arbitration clause, without more, will not suffice." *Peabody Holding Co., LLC v. United Mine Workers of Am., Int'l Union*, 665 F.3d 96, 102 (4th Cir. 2012) (internal quotation marks omitted).

Peloton's operative Terms of Service provide "[t]he arbitrator shall have exclusive authority to decide all issues relating to the interpretation, applicability, enforceability and scope of [the parties'] arbitration agreement." Operative Terms of Service § 20.4.

The Court is of the firm opinion this language is exactly the sort of "clear and unmistakable evidence" required to show "that the parties have chosen to give arbitrability questions to an arbitrator." *Simply Wireless, Inc.*, 877 F.3d at 526.

Accordingly, as it appears a valid arbitration agreement exists that would compel arbitration on the underlying dispute between the parties, the Court orders all other claims concerning the interpretation, construction, applicability, unconscionability, arbitrability, enforceability, and formation of the Agreement be decided by the arbitrator, rather than the Court.

Given the Court's holding, the Court need not consider the parties' remaining arguments. *See Karsten v. Kaiser Found. Health Plan of Mid-Atl. States, Inc.*, 36 F.3d 8, 11 (4th Cir. 1994) ("If the first reason given is independently sufficient, then all those that follow are surplusage; thus, the strength of the first makes all the rest dicta.").

### C.     *Whether this case should be stayed or dismissed pending arbitration*

Peloton requests the Court dismiss this case or, in the alternative, stay the matter pending arbitration. Miller insists that if the Court compels arbitration, it must stay the case.

Generally, "[t]he FAA requires the Court to stay 'any suit or proceeding' pending arbitration of 'any issue referable to arbitration under an agreement in writing for such arbitration.'" *Adkins*, 303 F.3d at 500 (quoting 9 U.S.C. § 3). The Court may dismiss a case only when all the issues presented in the lawsuit are arbitrable. *See Choice Hotels Int., Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001) ("Notwithstanding the terms of § 3, . . . dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable.").

Because the Court determines an arbitrator must decide the threshold issue of arbitrability, a stay of this case is warranted until an arbitrator determines all issues in this case are arbitrable—

in which case the Court will dismiss the case—or an arbitrator decides some or all of the issues should be resolved by the Court—in which case the Court will lift the stay at the appropriate time.

Accordingly, the Court will stay the case pending a determination of arbitrability. The parties shall file a joint status report every ninety days. If an arbitrator determines all claims are arbitrable, the parties shall notify the Court within one week. Similarly, if an arbitrator determines all claims are nonarbitrable or otherwise makes a determination that will allow the Court to lift the stay, the parties shall also notify the Court within one week.

### V.     CONCLUSION

For the reasons stated above, it is the judgment of the Court Peloton's motion compel arbitration is **GRANTED** and its motion to dismiss is **DENIED**. This matter is **STAYED** pending a determination of the arbitrability of Miller's claims.

**IT IS SO ORDERED.**

Signed this 19th day of October 2023, in Columbia, South Carolina.

s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE